```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
TROPICAL SAILS CORP.,           :
                                :
              Plaintiff,        :
                                :
     -against-                  :
                                :
YEXT, INC.,                     :
                                :
              Defendant.        :
------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/12/2016

No. 14 Civ. 7582
**OPINION & ORDER**

APPEARANCES
FOR PLAINTIFF TROPICAL SAILS CORP.
    David Slade, Esq.
    James Allen Carney, Esq.
    Joseph Henry Bates, III, Esq.
    CARNEY BOWMAN CARNEY & WILLIAMS, PLLC

    Thomas M. Mullaney, Esq.
    LAW OFFICES OF THOMAS M. MULLANEY

FOR DEFENDANT YEXT, INC.
    Gavin J. Rooney, Esq.
    LOWENSTEIN SANDLER LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Defendant Yext, Inc.'s ("Yext") motion to seal certain documents submitted in connection with both its motion for summary judgment and Plaintiff Tropical Sails Corp.'s ("Tropical Sails") motion for class certification. Tropical Sails consents to the requested sealing. (Mem. of Law in Support of Mot. to Seal 1 [hereinafter "Mem."] (filed Mar. 29, 2016), ECF No. 75.) For the reasons below, the Court GRANTS in part and DENIES in part Yext's motion to seal.

## I. Background

The Court assumes familiarity with the facts as set forth in its May 18, 2015 Opinion & Order. See Tropical Sails Corp. v. Yext, Inc., No. 14 Civ. 7582, 2015 WL 2359098 (S.D.N.Y. May 18, 2015). Briefly summarized for the instant motion, Yext is an online advertising company that assists businesses in monitoring their business listings with web directories. Id. at *1. In order to accomplish this, Yext sells subscriptions to its PowerListings service, which purports to assist businesses in identifying and correcting errors in their business listings on web directories. Id. Tropical Sails is a small business involved in the travel cruise ship industry that purchased a subscription to Yext's PowerListings service. Id. Tropical Sails brings suit against Yext for itself and others similarly situated alleging that Yext fraudulently induced it and others to purchase Yext's PowerListings service and that Yext has been unjustly enriched by Tropical Sails's and others' purchase of Yext's PowerListings service. Id. at *5-7.

## II. Procedural History

Tropical Sails commenced this action by class action complaint on September 18, 2014. Id. at *2. In addition to its causes of action for fraudulent inducement and unjust enrichment, Tropical Sails alleged claims for violations of New York General Business Law sections 349 and 350, which this Court

dismissed on May 18, 2015, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Id. at *3-5.

Tropical Sails moved for class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on December 15, 2015. On January 22, 2016, Yext moved for summary judgment pursuant to Federal Rule of Procedure 56. Both motions were fully briefed on March 11, 2016.

### III.  Discussion

#### A.  Legal Standard

Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." In re Parmalat Secs. Litig., 258 F.R.D. 236, 242 (S.D.N.Y. 2009) (quoting In re Zyprexa Injunction, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007)). Rule 26(c) guides the court's discretion by requiring that a protective order issue only upon a finding of good cause. Id. at 242-43. The proponent of the protective order bears the burden of demonstrating good cause for closure. Id. at 243. This burden "is significantly enhanced with respect to 'judicial documents,'" because a common law presumption of, and a qualified First Amendment right to, access attaches to judicial documents. Standard Inv. Chartered, Inc. v. FINRA, 347 F. App'x 615, 615 (2d Cir. 2009) (summary order); accord Lugosch

3

v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-120 (2d Cir. 2006).

To determine whether sealing is appropriate under the common law presumption of access, the court applies a three-step balancing test.  At the first step, the Court must determine whether the documents that the proponent of the protective order seeks to protect are "judicial documents." Lugosch, 435 F.3d at 119.  If so, the document carries a common law presumption of access, and the second step requires the Court to assign a weight to that presumption along "a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. (quoting United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1049 (2d Cir. 1995)).  At the third and final step, the Court considers any competing factors that counterbalance the weight of the presumption, including the privacy interests of the proponent. Id. at 120.

To determine whether the qualified First Amendment right of access applies to written documents submitted to a court, the Second Circuit uses two methods.  One method, the so-called "experience and logic" approach, requires the court to determine "whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular

4

process in question.'" Id. (quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)). The other method requires the court to determine the degree that the judicial documents "derived from or [are] a necessary corollary of the capacity to attend relevant proceedings." Id. (alteration in original) (quoting Hartford Courant Co., 380 F.3d at 93). This determination tracks the first step of the Lugosch balancing test. Under the experience and logic method, the common law presumption of access to judicial documents generally supports a finding that the documents were historically open to the public. Id. Similarly, under the second method, when the parties submit judicial documents in connection with public judicial proceedings that themselves implicate the right of access, a qualified First Amendment right of access extends to such documents. Hartford Courant Co., 380 F.3d at 93.

If a qualified First Amendment right of access exists, the Court then considers whether the proponent of sealing can demonstrate that "higher values" outweigh that right. Lugosch, 435 F.3d at 124. This determination tracks the third step of the Lugosch balancing test's consideration of "countervailing factors." The First Amendment framework, however, is "more stringent" and "sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary

5

to preserve the higher values and only if the sealing is narrowly tailored to achieve that aim." Id.

### B. Application

Yext moves to seal 22 of 65 exhibits appended to the motions (or just over one-third of the total). (Mem. 1.) Yext classifies these exhibits in two categories. The first category of documents are those reflecting "its confidential marketing and business development activities." (Decl. of Gavin J. Rooney ¶ 6 [hereinafter "Rooney Decl."] (filed Mar. 29, 2016), ECF No. 76.) Counsel for Yext explains that these documents include Yext's sales training manuals, internal marketing strategies, company marketing plans, and internal emails discussing marketing tests. (Id.) The second category of documents are those reflecting "its confidential sales statistics." (Id. ¶ 7.) Counsel for Yext explains that these documents describe Yext's otherwise private revenue figures. (Id.)

#### 1. Both Categories of Documents Are Judicial Documents

All of the documents Yext seeks to seal were submitted in support or in opposition to either a motion for summary judgment or a motion for class certification. Documents submitted in connection with a motion for summary judgment are judicial documents as a matter of law. Lugosch, 435 F.3d at 121. This is so because summary judgment is the formal governmental act of adjudication, "which should, absent exceptional circumstances,

be subject to public scrutiny." Id. (quoting Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982)).  Seven of the 22 exhibits Yext seeks to file under seal were appended to Tropical Sails's opposition to Yext's motion for summary judgment. (See Rooney Decl. ¶ 9(C).)  These seven exhibits are judicial documents.

    Class certification, by contrast, is not an adjudication. See Adjudication, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining adjudication as "[t]he legal process of resolving a dispute; the process of judicially deciding a case"). But see Mark v. Gawker Media LLC, No. 13 Civ. 4347(AJN), 2015 WL 7288641, at *2 (S.D.N.Y. Nov. 16, 2015) ("Given that class certification is an adjudication, the Court further finds that the documents submitted in connection with Plaintiffs' Motion for Class Certification are 'judicial documents.'").  Class certification is, however, a determination by the Court whether a plaintiff's suit meets the specified criteria in Federal Rule of Civil Procedure 23. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398-99 (2010).  This determination involves more than a review of the complaint. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2241, 2551 (2011) ("Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently

7

numerous parties, common questions of law or fact, etc."). Indeed, the class certification determination requires a "rigorous analysis" that "generally involves considerations that are enmeshed with the factual and legal issues comprising the plaintiff's cause of action" and, to accomplish such an analysis, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Id. at 2551-52 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)).  The exhibits supporting a motion for, or opposition to, class certification would certainly be relevant to the judicial function and useful to the judicial process in probing behind the pleadings to determine whether the plaintiff's suit meets the special criteria set forth in Rule 23 for class certification.  Accordingly, the 15 exhibits filed in support of a motion for class certification are judicial documents.

    **2.   The More Stringent First Amendment Framework Applies**

As judicial documents, the exhibits that Tropical Sails and Yext rely upon to support or oppose their motions for class certification and summary judgment give rise to a qualified First Amendment right of access to these documents.

Under the experience and logic test, the mere status of these documents as judicial documents suggests that these documents have historically been open to the public. See

Hartford Courant Co., 380 F.3d at 92.  Moreover, logic confirms that public access to written documents submitted in connection with pretrial motions is important "both for understanding the [judicial] system in general and its workings in a particular case." Id. at 95 (quoting Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 572 (1980)).  This is so because the Court will rely (or the parties believe the Court should rely) on the supporting documents to determine whether Rule 23's criteria are met and whether any genuine dispute as to any material fact exists under Rule 56. See Lugosch, 435 F.3d at 123 ("If the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision . . . documents that the judge should have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision." (alteration in original) (quoting In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 101 F.R.D. 34, 43 (C.D. Cal. 1984))).

Similarly, under the second approach, oral arguments relating either to a motion for class certification or summary judgment are judicial proceedings that implicate the right of access and this right of access necessarily extends to the written documents submitted in connection therewith. Lugosch, 435 F.3d at 124; In re N.Y. Times Co., 828 F.2d 110, 114 (2d Cir. 1987).

Accordingly, because there is a qualified First Amendment right of access to the exhibits filed in connection with Tropical Sails's motion for class certification and Yext's motion for summary judgment, the more stringent First Amendment framework applies and the public's constitutional right of access may be overcome only by specific, on-the-record findings that closure is essential to protect higher values and narrowly tailored to achieve that aim. Lugosch, 435 F.3d at 124.

### 3. Closure Is Essential to Protect Higher Values for the Marketing and Business Development Documents But Not for the Sales Statistics Documents

Yext bears the burden of demonstrating what higher values overcome the presumption of public access and justify sealing. See DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997). To meet this burden, Yext "must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." In re Parmalat, 258 F.R.D. at 244. Yext has met this burden for the category of documents relating to marketing and business development, but not for the category of documents relating to sales statistics.

Rule 26(c)(1)(G) directs that, upon good cause, a court may issue a protective order "requiring that a trade secret or other

confidential research, development, or commercial information not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(G). "Internal documents and unpublished drafts that contain non-public strategies and financial information constitute 'confidential commercial information' under Federal Rule 26(c)(1)(G) . . . ." New York v. Actavis, PLC, No. 14 Civ. 7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014); accord Vesta Corset Co. v. Carmen Founds., Inc., No. 97 Civ. 5139, 1999 WL 13257, at *2 (S.D.N.Y. Jan. 13, 1999) ("Pricing and marketing information are widely held to be 'confidential business information' that may be subject to a protective order.").

Counsel for Yext describes the documents relating to marketing and business development activities as sales training materials, internal marketing strategies, company marketing plans, and internal emails regarding marketing tests. (Rooney Decl. ¶ 6.) He identifies specific harm that Yext will suffer if these materials are disclosed to be the exposure to its competitors of Yext's market predictions and intelligence, product comparisons, and strategy. (Id.) This competitive injury is sufficiently serious to warrant protection under Rule 26. See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (granting motion to redact documents containing advertising expenditures and plans, merchandising strategies, policies, and sales); GoSMiLE, Inc. v.

Dr. Johnathan Levine, D.M.D. P.C., 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (granting motion to seal "highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting").

By contrast, counsel for Yext describes the documents relating to sales statistics by reference to one exhibit that "provides a chart setting forth the monthly sales statistics for PowerListings during the putative class period." (Rooney Decl. ¶ 7.) He claims that "[t]his information relates to Yext's revenues (which information would not otherwise be publicly available)." (Id.) However, "implicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public." Salomon Smith Barney, Inc. v. HBO & Co., 98 Civ. 8721(LAK), 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001). Therefore, the simple fact that Yext's revenue information has not previously been disclosed is not enough to warrant protection.[1]

---

[1] The Court notes that Yext's claim that information relating to its revenues "would not otherwise be publicly available" is, at the very least, perplexing in light of such industry articles claiming that "Yext . . . is announcing $88.8 million in revenue for its fiscal 2016 year" and "Yext this morning announced that it has raised $50 million in Series F funding." See Katie Roof, Yext Sees $88.8 Million Revenue, 48% Growth for Location Data, TECHCRUNCH (Mar. 10, 2016), http://techcrunch.com/2016/03/10/yext-sees-88-8-million-revenue-48-growth-for-location-data/; Dan Primack, Yext Raises $50 Million at $525 Million Valuation,

A legitimate privacy interest certainly exists in the financial documents of a privately held company. See Amodeo II, 71 F.3d at 1051 ("Financial records of a wholly owned business . . . will weigh more heavily against access than conduct affecting a substantial portion of the public."); accord Louis Vuitton, 97 F. Supp. 3d at 511 (permitting redactions of confidential business information for a closed business).  Here, however, counsel makes only the broad allegation of general harm that "[p]ublic disclosure . . . would raise a substantial risk of harm to Yext since competitors would have access to Yext's confidential sales information." (Rooney Decl. ¶ 7.)  Counsel fails to provide either specific examples how, or articulated reasons why, such access would harm Yext.  Absent such a showing, Yext has not met its burden and the qualified First Amendment right to access outweighs Yext's privacy interest in the sales statistics documents.

**4.   No Less Restrictive Alternative to Sealing Exists Here**

Finally, even when the proponent establishes that higher values exist to overcome the right of access, the Court must determine whether the proposed method of protecting those values is narrowly tailored to achieve that aim. Lugosch, 435 F.3d at 124.

---

FORTUNE (June 4, 2014, 10:07 AM), http://fortune.com/2014/06/04/yext-raises-50-million-at-525-million-valuation/.

The Court has reviewed the 19 documents relating to marketing and business development activities that Yext seeks to seal. Sealing is narrowly tailored here because the documents contain only marketing and business development information.

## Conclusion

Yext has met its burden for continued sealing of the documents relating to marketing and business development activities. It is directed to file those 19 documents under seal. The remaining three documents—(1) Exhibit 4 to Tropical Sails's motion for class certification; (2) Exhibit B to the Declaration of Max Shaw in support of Yext's Opposition to Tropical Sails's motion for class certification; and (3) Exhibit 5 to Tropical Sail's opposition to Yext's motion for summary judgment—shall be filed on ECF in the same manner as all other public documents. The Court cautions the parties that it may revisit this decision following the resolution of the parties' motions because "it is impossible to determine what material the Court will rely upon in its decisions, and it is probable that information relied upon will be subject to a heightened presumption of access." Mark, 2015 WL 7288641, at *3.

SO ORDERED.

Dated: New York, New York
April 12, 2016

*John F. Keenan*
John F. Keenan
United States District Judge

14